STOKER, Judge.
This is a trip and fall case. The case involves questions of negligence of a paving contractor and a jaywalking pedestrian and personal injury damages if there is liability. The case also involves issues arising out of the obligation of the contractor to furnish liability insurance to the City of Rayne. We reverse a jury finding that the accident resulted from any negligence on the part of the contractor and dismiss plaintiffs’ suit. We affirm the trial court judgment in favor of the City of Rayne and its insurer.
The plaintiff, Sylvia Domingue, sustained injuries when she allegedly tripped on a guide string as she attempted to cross Arenas Street in the City of Rayne. The string was placed alongside the roadbed by H & S Construction Company (H & S) to guide its paving machines. H & S was the general contractor doing street resurfacing work for the City of Rayne. The accident occurred on May 22,1985. Mrs. Domingue and her husband, E.J. Domingue, filed suit against H & S, its insurer, First Horizon Insurance Company (First Horizon), the City of Rayne and its insurer, Twin City Fire Insurance Company (Twin City). The City of Rayne and Twin City filed a cross-claim against H & S and First Horizon seeking contractual indemnity under the contract between H & S and the City of Rayne and defense as an insured under a policy of insurance issued by First Horizon to the City of Rayne.
The plaintiffs’ claims against H & S and First Horizon were tried to a jury. The claims against the City of Rayne were tried before the judge. The plaintiffs’ claims against Twin City were dismissed prior to trial. The trial judge also heard and decided the cross-claim of the City of Rayne and Twin City against H & S and First Horizon.
After a trial on the merits, the jury rendered a verdict finding Sylvia Domingue 60% at fault and H & S 40% at fault in the cause of plaintiff's trip and fall. The jury awarded the plaintiffs a total of $25,000 in special and general damages and denied Mr. Domingue’s claim for loss of consortium. The trial judge rendered judgment in favor of the City of Rayne dismissing plaintiffs’ claims and in favor of the City of Rayne and Twin City on their cross-claim awarding the cost of defense against First Horizon. The trial judge dismissed the cross-claim as against H & S. The jury’s verdict was made the judgment of the trial court and judgment was rendered accordingly.
The plaintiffs have appealed the judgment of the trial court. H & S and First Horizon have appealed and the City of Rayne has answered their appeal. The issues presented in this appeal are (1) what, if any, degree of negligence should have been assessed against Mrs. Domingue and H & S, respectively, (2) was the jury’s award of damages so inadequate as to constitute an abuse of discretion, and (3) did the trial judge err in awarding judgment in favor of the City of Rayne against First Horizon?
FACTS
On May 22, 1985, at approximately 10:10 a.m., Sylvia Domingue, accompanied by her husband and brother-in-law, stopped at The Ritz, a bar owned by her mother-in-law, located on Arenas Street. Mrs. Domingue got out of her husband’s van intending to cross Arenas Street to mail some letters at the post office. Arenas Street had recently been resurfaced with asphalt by H & S as part of its street resurfacing project for the City of Rayne. Mrs. Domingue walked across The Ritz’s shell parking lot to the street’s edge where she suddenly fell, injuring her elbows and right knee. Her husband and brother-in-law came to her assistance and she was subsequently transported *915 by ambulance to the local hospital for treatment of her injuries. In July of 1985 Mrs. Domingue underwent a meniscectomy to remove a tom cartilage from her right knee.
At the time of the fall, Mrs. Domingue was employed as a bakery manager by a Safeway store in Lafayette. She earned $10.54 per hour in that position. After plaintiffs accident, the Safeway store closed and plaintiff lost her job. Plaintiff has been unemployed since the accident and has maintained that the injury to her knee prevented her from being employed in the same capacity as before the accident.
H & S’s LIABILITY[1]
Plaintiffs alleged that H & S was negligent in placing “heavy string guidelines,” which were not easily detected, adjacent to the edge of the blacktop and in leaving the guidelines in place after the blacktopping work had been completed and in failing to warn of the dangerous condition. Plaintiff alleges that this string caught her foot while she was crossing Arenas Street and caused her to fall. The defendants denied any liability but in the alternative alleged contributory negligence on Mrs. Do-mingue’s part in failing to keep a proper lookout while crossing a street obviously under repair and in the further alternative that she voluntarily assumed the risk of her injuries by crossing as she did.
In an action asserting negligence as the grounds for recovery, the court must consider the asserted negligence by utilizing a duty-risk analysis. A duty-risk analysis involves consideration of the following questions:
Was defendant’s conduct a cause in fact of the accident?
Did defendant owe a legal duty which encompassed the particular risk of harm to which plaintiff was exposed?
Did defendant breach that duty?
What damages, if any, did plaintiff sustain?
Forest v. State, Through Louisiana D. of Transp. and Development, 493 So.2d 563 (La.1986).
The plaintiffs must prove every element of their case by a preponderance of the evidence, either direct or circumstantial. Jordan v. Travelers Insurance Co., 245 So.2d 151 (La.1971). The jury concluded that the plaintiff had proved all of the necessary elements to find liability on the part of H & S for plaintiffs injuries, although it found that Sylvia Domingue’s own negligence was a greater factor in the cause of her injuries. After careful review of the record, we conclude that the jury’s determination that H & S was negligent is clearly wrong.
Whether Sylvia Domingue actually tripped on the string is a serious question of fact. No one witnessed the fall. Initially, in deposition testimony, Sylvia Do-mingue herself only assumed or deduced that she tripped on the string. She did not see it before her fall and only related a sensation of being caught by the string in her trial testimony. We pretermit this serious issue of causation. We move on to the question of whether the placement of the string and failure to remove it constituted an unreasonable risk of harm to pedestrians who might choose to cross the street at the place in question. For the purpose of considering this issue we assume causation.
The general duty imposed on those engaged in construction work, such as H & S, has been stated to be a duty to properly label, mark or barricade places in a construction site that present an unreasonable risk of harm to persons using the area. Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064 (La.App. 1st Cir.), writ, denied, 433 So.2d 1056-1057 (La.1983).
We find that the jury erroneously determined that the presence of the string constituted a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Campbell v. Tidwell, 407 So.2d 1359 (La.App. 3d Cir.1981).
The fact that plaintiff was injured in a fall and sustained damages does not in *916 and of itself create liability. The determination concerning what constitutes an unreasonable risk of harm must be made before the duty to warn can be imposed. In making this determination under either LSA-C.C. art. 2315 or 2317, the fact finder must decide questions of social utility which will require consideration of the particular case in terms of moral, social and economic considerations. Entrevia v. Hood, 427 So.2d 1146 (La.1983).
In the case of Hines v. Department of Transportation & Development, 503 So.2d 724 (La.App. 3d Cir.), writ, denied, 505 So.2d 1151 (La.1987), this court considered a somewhat similar trip and fall, liability for which was urged under both LSA-C.C. art. 2315 and art. 2317. The plaintiff in Hines tripped while attempting to cross a highway from a private parking lot. There was a difference of two to six inches in the elevation of the roadbed from the parking lot. The plaintiff was busy watching for oncoming traffic and her arms were full of laundry when she attempted to cross, tripped and injured herself. The trial court found no liability under LSA-C.C. art. 2315 or art. 2317 and this was affirmed on appeal. We find the rationale of the trial court in Hines, in finding that there was no unreasonable risk of harm, to be applicable to the case before us. The trial court in Hines concluded that, while plaintiff had proved some defect or imperfection, the defect or imperfection was passive. The imperfection posed no danger or risk of harm to vehicular traffic, the purpose for which the roadway was designed. Moreover, it did not pose a risk to one such as plaintiff using it as she did if it was used prudently.
The court stated that:
“[T]he pedestrian using this portion of the street, or any other highway in the State of Louisiana not designated for pedestrian traffic, should be observant of the surface conditions upon which they are walking. There is no evidence in this case that the defect constituted a hidden trap or that it could not have been seen by Plaintiff had she been using ordinary care in observing where she was walking. Plaintiff testified that she was not watching where she walked, but was looking for oncoming traffic. In Campbell v. Tidwell, 407 So.2d 1359, (La.App. 3d Cir.1981), the Court stated:
‘“Plaintiff was a pedestrian and as such is held to have seen that which she should have seen. A pedestrian is not required to look for hidden dangers but she is bound to observe her course and to see if her pathway is clear. A pedestrian is held to have seen those obstructions in her pathway which would be discovered by a reasonably prudent person exercising ordinary care under the circumstances.’ ”
Hines, supra, at 727.
See also Cormier v. City of Breaux Bridge, 524 So.2d 764 (La.App. 3d Cir. 1988).
In the case before us H & S was performing a major street resurfacing project for the City of Rayne. R.D. Jock, a construction supervisor with H & S, testified that the nylon string was set for a distance of two to three blocks and laid about six inches from the edge of the asphalt. The string was nailed down every 30 to 50 feet and lay flat on the ground. Mr. Jock demonstrated that the string was easily broken because, in his words, it was “not that stout.” Mr. Jock testified that the string is never picked up afterwards for reasons of cost and because it is eventually taken up by the street sweeper or covered by limestone. James Odom, an engineer with Barnard and Thomas, the firm overseeing the work, testified to essentially the same things as Mr. Jock. Mr. Odom testified that using guide strings is standard in the industry and that he had never seen a string one to one and one-half inches off of the ground as testified to by the Do-mingues.
Mrs. Domingue testified that she knew that the road had been resurfaced approximately three weeks earlier and was familiar with the area as she went to The Ritz about once a week. There was no crosswalk in the area where Mrs. Domingue attempted to cross. She was traversing a gravel parking lot in flat sandals with let *917 ters in her hand to be mailed. The day was clear and the weather good. Mrs. Do-mingue testified that she did not see the string. Mrs. Domingue also testified that she did not look down in the area where she was walking because she was looking for oncoming traffic and did not stop at the edge of the road before attempting to cross. Mrs. Domingue testified that she knew there was an approximately two-inch difference in elevation between the shoulder area and roadway, yet she did not look down at the edge of the roadway.
Plaintiff introduced into evidence photographs of the scene taken on the same day as Mrs. Domingue’s fall. The photographs showed the string as it appeared alongside the asphalt road and Henry Domingue holding the string up. While the quality of photographs is not the best, after examination of the photographs we find that string is easily discernible and should have been so to Mrs. Domingue had she exercised ordinary care in observing where she was walking.
We find that plaintiffs failed to prove by a preponderance of the evidence that the string presented an unreasonable risk of harm to persons using the area. Simply because Mrs. Domingue tripped on the string does not raise it to the level of a defect or unreasonably dangerous condition. The state and municipalities are charged with the onerous task of maintaining hundreds of miles of streets and highways for use by vehicular traffic. This duty is carried out by companies such as H & S. H & S and other similar entities should not be held to a different standard, in terms of determining what constitutes a defect, than the state and municipalities are held to. We find that the jury was clearly wrong in determining that the presence of the string constituted a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances.
For these reasons, we reverse the judgment of the trial court in favor of the plaintiffs and against H & S and dismiss plaintiffs’ suit at their cost.
FIRST HORIZON’S LIABILITY TO CITY OF RAYNE FOR COST OF DEFENSE
First Horizon has appealed the judgment of the trial court which ordered it to pay to the City of Rayne and Twin City the sum of $9,926.50 representing the cost of defense, 12% in penalties on that amount and an additional $500 attorney’s fees representing the cost to prove entitlement to indemnification.
First Horizon maintains that H & S could not contract to provide indemnification to the City of Rayne because such would be prohibited by LSA-R.S. 38:2216 E; a fortio-ri, it argues any contractual requirement that H & S provide liability insurance to the City of Rayne would also be prohibited. Therefore, it is First Horizon’s position that it had no duty under either section 7.04 of the contract or under the policy of insurance that it issued to the City of Rayne pursuant to section 7.05 of the contract.
The statutory authority that First Horizon relies on reads, in pertinent part, as follows:
“LSA-R.S. 38:2216
“E. It is hereby declared that any provision contained in a public contract, other than a contract of insurance, providing for a hold harmless or indemnity agreement, or both, from the contractor to the public body for damages arising out of injuries or property damage to third parties caused by the negligence of the public body, its employees or agents are contrary to the public policy of the state of Louisiana, and any and all such provisions in any and all public contracts issued after the effective date hereof, are null and void.”
What is prohibited by the statute is indemnification for the public body’s negligence. It does not prohibit indemnification for the consequences of a contractor’s negligence. The statute does not contain a blanket prohibition against all contracts for indemnification in favor of public entities. The contract between the City of Rayne *918 and H & S has a hold harmless provision which reads, in pertinent part, as follows:
“7.04 HOLD HARMLESS AGREEMENT:
The Contractor shall indemnify and hold harmless the Owner and the Engineers and their agents and employees from and against all claims, damages, losses and expenses including attorneys’ fees arising out of or resulting from the performance of the work, provided that any such claim, damage, loss or expense; (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the work itself), including the loss of use resulting therefrom; and (b) is caused in whole or in part by any negligent act or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder.”
This clause requires the contractor to indemnify the City for damages, loss or expense arising out of the contractor’s negligence. We find that this is not an indemnity provision which the statute seeks to prohibit.
The statute does not expressly prohibit a contractor from contracting to provide the public body with liability insurance, but it follows that the public body may not require the contractor to provide such a policy that would circumvent the purpose of the anti-indemnity provision. This public policy can be found embodied in an express prohibition contained in the Oilfield Indemnity Act, LSA-R.S. 9:2780, and would be analogous to the type of contract before us. However, what the contract before us requires is, in pertinent part, as follows:
“C. Owner’s Protective Liability Insurance:
“The. Contractor shall take out and maintain during the life of this Contract a separate policy covering Owner’s Protective Liability Insurance. This policy shall be made out in the name of the Owner and shall be in the amounts and with the limits as set out under Paragraph B.2. herein.”
The policy issued by First Horizon to the City of Rayne is titled “Owners' and Contractors’ Protective Liability Insurance Coverage For Operations of Designated Contractor.” The designated contractor is H & S. The policy provides that:
“The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this policy applies, caused by an occurrence and arising out of (1) operations performed for the named insured by the contractor designated in the declarations at the location designated therein or (2) acts or omissions of the named insured in connection with his general supervision of such operations, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company’s liability has been exhausted by payment of judgments or settlements.
“Exclusions
“This policy does not apply:
* * * * * *
“(c) to bodily injury or property damage arising out of any act or omission of the named insured or any of his employees, other than general supervision of work performed for the named insured by the designated contractor;” (Emphasis added.)
The coverage of the policy is limited to the negligence of the designated contractor and negligence, involving general supervision, of the City of Rayne. The policy does not provide coverage for acts of negligence of the City of Rayne for which public policy *919 would prohibit indemnification. We find that the policy in question does not circumvent the prohibition against indemnification contained in the statute or violate public policy. First Horizon had a duty to defend, which it refused to do, and the City of Rayne and Twin City should recover their costs and attorneys’ fees from First Horizon. For these reasons, the portion of the judgment in favor of the City of Rayne and Twin City and against First Horizon is affirmed.
DECREE
The judgment of the trial court is reversed insofar as it awarded judgment in favor of the plaintiffs and affirmed in all other respects. Costs of appeal are assessed equally to plaintiffs and First Horizon.
REVERSED IN PART; AFFIRMED IN PART.

. The finding of no liability on the part of the City of Rayne was not appealed.