HUGHES, J.
12This is an appeal from a district court judgment in favor of a subcontractor on a roadway project, awarding to it funds deposited by the state into the court’s regis*899try. For the reasons that follow, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
In 2004 the Louisiana Department of Transportation and Development (“DOTD”) selected Denton James, LLC1 as contractor for State Project Numbers 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 and 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, known as the “Juban Road Interchange at 1-12” project (herein “the project”), in Livingston Parish. The contract between DOTD and the contractor was signed in November of 2004, and the contractor executed a payment bond in accordance with LSA-R.S. 48:256.3. Thereafter, the contractor entered into a contract with a subcontractor, PRC Construction Group, LLC (“PRC”), for site clearing work. The PRC subcontract prohibited PRC from subcontracting any of its work without the prior consent of the contractor. Nevertheless, without the contractor’s knowledge, PRC allegedly subcontracted some portion of the work to Environmental Abatement Services, Inc. (“EASI”), who in turn contracted with Don Bihm Equipment Co., Inc. (“Bihm”), to provide heavy equipment for the project.
In February of 2005 Bihm leased a trackhoe and a bulldozer to EASI, which were delivered to the Juban Road project site. The equipment was |-¡returned to Bihm by the end of May, 2005; however, EAST failed to pay Bihm the rental charges. Also in May of 2005, PRC’s contract was terminated by the contractor for failure to perform the work in a timely manner. According to the contractor, PRC was paid, prior to the date of termination, for all of the work it had performed on the project. The contractor maintained that it did not know about PRC’s contracts with either EASI or Bihm until after PRC had been terminated.
On July 11, 2005 Bihm filed a material-man’s lien in the Livingston Parish public records, stating that $18,433.09 was owed on the equipment lease to EASI. A demand letter was sent by Bihm’s attorney, along with a copy of the lien and attached substantiating documents, to EASI, DOTD, the contractor, and PRC, on July 26, 2005.2 In a suit entitled Don Bihm Equipment Co., Inc. v. Environmental Abatement Services, Inc., filed in the Nineteenth Judicial District Court under Suit Number 544,302, Bihm obtained a default judgment, in April of 2007, against EASI in the amount of $18,433.09. The default judgment was also filed in the Livingston Parish public records on April 26, 2007. Bihm has been unable to collect on the sum owed.
A final acceptance of completed work on the project was issued by DOTD on September 20, 2007, and was filed in the Livingston Parish public Rrecords on October 4, 2007, in accordance with LSA-R.S. 48:256.4.3 However, the amount of $10,644.93 was retained from DOTD’s final payment to the contractor, in accordance *900with LSA-R.S. 48:256.1,4 and held pending the resolution of the lien on the project.
On May 8, 2008 Bihm commenced this suit by filing its “Petition for Concursus” against DOTD, the contractor, and EASI. DOTD responded to the suit, denying liability, asserting Bihm’s alleged failure to comply with statutory requirements, and also asserting a lack of privity of contract between itself and Bihm. DOTD sought and received an order from the district court allowing it to deposit into the court’s registry the $10,644.93 in retained funds, and requiring the other parties to litigate their respective claims to those funds.
| ¿¡Following an April 14, 2010 trial of the matter, the district court rendered judgment, which was signed on June 2, 2010, awarding Bihm the sum deposited in the registry of the court, $10,644.93. The judgment further declared that the award was “deemed the full and final satisfaction for all claims pertaining to this project” with respect to the contractor, EASI, PRC, and DOTD.
The contractor has appealed this judgment, and on appeal asserts the district court erred: (1) in finding that Bihm was a “claimant” under LSA-R.S. 48:256.5; (2) in allowing Bihm’s claim when no copy of the lease of movables was delivered to the contractor, as required by LSA-R.S. 48:256.5(C); (3) in “failing to grant judgment in favor of [the contractor] for any amounts for which [the contractor] was found liable to Don Bihm;” (4) in failing to grant judgment in favor of the contractor, cancelling Bihm’s claim pursuant to LSA-R.S. 48:256.6, and for damages and attorney fees for failing to cancel the claim; (5) in admitting into evidence Bihm’s claim under LSA-R.S. 48:256.5 without proper authentication or self-authentication; and (6) in not requiring the naming of all parties required by LSA-R.S. 48:256.8 for a concursus proceeding on Bihm’s claim.
LAW AND ANALYSIS
The history of workmen’s and/or materi-almen’s liens, in the context of public *901works, was discussed by the supreme court in Wilkin v. Dev Con Builders, Inc., 561 So.2d 66, 70-71 (La.1990), as follows:
Louisiana has long evidenced an intent to protect those who perform work and supply materials for the construction and repair of buildings and other works. The earliest Louisiana Civil Code granted a privilege on immovables to workmen employed in constructing and repairing buildings or works. Later Codes included suppliers of materials for buildings or improvements in the class of those who were entitled to the rights, and granted them a lien and a privilege on the building | Ror improvement as well as on the lot of ground on which the building or improvement stood.
However, workmen and suppliers engaged by agencies of the state for construction and improvement of public property were not entitled to take advantage of these provisions, or of provisions of later enacted private building contract statutes [LSA-R.S. 9:4801 et seq.] because liens were not enforceable against public property. Because of the need to protect those performing labor and furnishing materials for public works, the Legislature in 1918 passed Act 224, the precursor to current public works statutes, [LSA-R.S. 38:2241 et seq.], granting rights to laborers and materialmen involved in public works. The public contract law did not grant its beneficiaries a lien on the public work itself, but gave them, in effect, a “privilege against the unexpended fund in the possession of the authorities with whom the original contract ha[d] been entered into.” Act 224 stated as its purpose the protection of “persons doing work, performing labor or furnishing material for the construction ... of public buildings .... ”
Public contract law provides that when the representative of a governing authority enters into a contract for construction of a public work, a bond must be provided. The law further establishes [in LSA-R.S. 38:2242] the means for asserting a claim:
Any person to whom money is due for doing work, performing labor, or furnishing materials or supplies for the construction ... of any public works ... may after the maturity of his claim and within forty-five days ... of notice of default of the contractor ..., file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.
... The effect of these provisions is to give certain classes of persons not enjoying privity of contract with the general contractor or with the governing authority a claim nevertheless against the general contractor and his surety and in some instances a claim against the governing authority itself. The provisions also protect the public authority complying with the requirements of the statutes from expenses caused by failure of the contractor to faithfully perform the contract.
[Citations and footnotes omitted.]
Prior to the enactment of the DOTD Public Works Act, LSA-R.S. 48:256.3 et seq. (added by 1997 La. Acts, No. 1112, § 1, effective July 14, 171997), the state’s general Public Works Act, LSA-R.S. 38:2241 et seq., was applicable to DOTD contracts. See e.g. Louisiana Paving Co., Inc. v. State through the Department of Highways, 372 So.2d 245 (La.App. 1 Cir.1979). The DOTD Public Works Act was enacted to exclusively govern the contracts of DOTD. See Martin Marietta Materials of Louisiana, Inc. v. United States Fideli*902ty and Guaranty Company, 41,280, p. 6 (La.App. 2 Cir. 9/27/06), 940 So.2d 152, 156. Even though the provisions of the DOTD Public Works Act are nearly identical to those of LSA-R.S. 38:2241 et seq., since its enactment, the DOTD Public Works Act exclusively governs the public contracts of DOTD. See Gilchrist Construction Co., Inc. v. Terral RiverService, Inc., 2001-1617, pp. 3-5 (La.App. 3 Cir. 5/1/02), 819 So.2d 362, 365-66, unit denied, 2002-2121 (La. 11/8/02), 828 So.2d 1119.
The DOTD Public Works Act authorizes, in LSA-R.S. 48:256.8, certain claims to be litigated in a concursus proceeding. See Case Atlantic Company v. Blount Brothers Construction, Inc., 42,251, p. 2 (La.App. 2 Cir. 6/20/07), 960 So.2d 1274, 1276, writ denied, 2007-1541 (La. 10/12/07), 965 So.2d 403. The concursus proceeding authorized by LSA-R.S. 48:256.8 is required to be filed in the proper court of the parish where the public work was done and may be filed by a “claimant.” LSA-R.S. 48:256.8(A)-(B). A “claimant” means “any person to whom money is due pursuant to a contract with the owner or a contractor or subcontractor for doing work, performing labor, or furnishing materials or supplies for the construction, alteration, or repair of any public works ..., including persons to whom money is due for the lease or rental of movable property, used at the site of the immovable and leased to the contractor or subcontractor by written contract.... ” LSA-R.S. 48:256.5(A).
| SA claim asserted by a subcontractor arising out of a DOTD contract must satisfy the notice requirements of LSA-R.S. 48:256.5 to be entitled to the protections afforded under the DOTD Public Works Act. See Gilchrist Construction Co., Inc. v. Terral RiverService, Inc., 2001-1617 at pp. 4-5, 819 So.2d at 365-66. As provided in LSA-R.S. 48:256.5(B), a claimant may present his claim within forty-five days after the re-cordation of final acceptance of the work by DOTD or of notice of default of the contractor or subcontractor, by following the procedure set forth therein. However, to be entitled to assert a claim under LSA-R.S. 48:256.5(B), LSA-R.S. 48:256.5(0(1) requires a “lessor of movables” to deliver a copy of the lease to DOTD and the contractor “not more than ten days after the movables are first placed at the site of the immovable for use in the work.”5
*903In the instant case, it was not established that the notice requirement set forth in LSA-R.S. 48:256.5(C)(1) was met by the lessor of movables, Bihm. Don Bihm testified at the trial of the matter that he did not personally deliver a copy of his company’s contract with EASI to either the contractor or DOTD. Rather, Mr. Bihm asked EASI employee Eddie Guillory to | gdeliver a copy of the contract. Bihm failed to present sufficient evidence at trial to show that the requisite delivery of the contract copy to DOTD and the contractor was accomplished within the time frame prescribed by LSA-R.S. 48:256.5(C)(1).
Moreover, Jeffrey B. James and Gerald Denley, both company managers for the contractor, testified at trial that they did not know Bihm was working on the project prior to terminating and issuing final payment to subcontractor PRC in May of 2005. Mr. James and Mr. Denley testified that if they had known about Bihm’s claim beforehand, they could have held back the disputed amount until the claim was resolved.6
It is a long-standing principle of statutory interpretation that as a general rule, lien statutes are stricti juris and should thus be strictly construed. Public contract laws are to be strictly construed, such that the privileges granted are not extended beyond the statutes. Because the law grants special rights to claimants, there must be strict compliance with its provisions. United Rentals Highway Technologies, Inc. v. St. Paul Surety, 37,-265, pp. 5-6 (La.App. 2 Cir. 8/20/03), 852 So.2d 1200, 1203 (citing State through the Division of Administration v. McInnis Brothers Construction, 97-0742 (La. 10/21/97), 701 So.2d 937, 944).
Because Bihm failed to meet the notice requirement of LSA-R.S. 48:256.5(C)(1), which by its plain language was a prerequisite to a DOTD public works claim for a lessor of movables, Bihm failed to establish that it was entitled to the relief sought. Thus, the district court erred in rendering judgment in Bihm’s favor.
|inHaving decided the issue on this basis, we find it unnecessary to address the other assignments of error seeking to overturn the district court judgment on the merits. However, the appellant/contractor further contends it should have been awarded damages and attorney fees under LSA-R.S. 48:256.6 for Bihm’s refusal to withdraw its lien and/or claim. Section 256.6 provides, in pertinent part:
A. (1) If a statement of claim or privilege is improperly filed or if the claim or privilege preserved by the filing of a statement of claim or privilege is extinguished, the public entity, contractor, or subcontractor, or other interested person may require the person who has filed a statement of claim or privilege to give a written authorization directing the recorder of mortgages to cancel the statement of claim or privilege from his records.
(2) The authorization shall be given within ten days after a written request for authorization has been received by the person filing the statement of claim or privilege from a person entitled to demand it.
(3) One who, without reasonable cause, fails to deliver written authorization to cancel a statement of claim or privilege as required by Subsection A of this Section shall be liable for damages suffered by the department, contractor, *904subcontractor, or other interested person requesting the authorization as a consequence of the failure and for reasonable attorney fees incurred in causing the statement to be canceled.
(4) A person who has properly requested written authorization for cancellation shall have an action against the person required to deliver the authorization to obtain a judgment declaring the claim or privilege extinguished and directing the recorder of mortgages to cancel the statement of claim or privilege if the person required to give the authorization fails or refuses to do so within the time required by Subsection A of this Section. The plaintiff may also seek recovery of damages and attorney fees to which he may be entitled under this Section.
After a careful review of the record and upon the showing made, we are unable to conclude that Bihm was without good cause in pursuing its claim for payment, even though it ultimately proved unsuccessful. Therefore, we do not find, under the particular facts and circumstances of this case, that LSA-R.S. 48:256.6 damages and attorney fees are warranted. See United Rentals Highway Technologies, Inc. v. St. Paul Surety, 37,265 at pp. 9-10, 852 So.2d at 1205.
CONCLUSION
For the reasons assigned herein, the judgment of the district court is hereby reversed and the matter is remanded for further proceedings in accordance with the foregoing. All costs of this appeal are to be borne by Don Bihm Equipment Co., Inc.
REVERSED AND REMANDED.

. Although "Denton James, LLC” was named as a defendant in this suit, during the course of the litigation the company became known as "JB James Construction, LLC,” and the motion for appeal filed in the district court was in the name of "JB James Construction, LLC F/K/A [formerly known as] Denton-James, LLC.” We refer to this party herein as "the contractor.”

. Although the record reflects that additional correspondence passed between Bihm’s counsel and the contractor's attorney in March and July of 2007, with at least one letter being forwarded to DOTD, this correspondence is not relevant to the issues addressed herein and is therefore not discussed.

. Louisiana Revised Statute 48:256.1(A) provides:
(1) The Department of Transportation and Development shall insert a clause in the specifications of all contracts let and awarded as a result of public lettings for the construction, improvement, maintenance, or repair of any road, highway, bridge, or appurtenance thereto or any other Department of Transportation and Development facility, providing for the retainage of amounts constituting a percentage of the gross value of the completed work as may be provided for in the contract. Retained amounts for projects which cost less than five hundred thousand dollars shall not exceed ten percent of the gross value of the completed work. Retained amounts for projects which cost five hundred thousand dollars or more shall not exceed five percent of the gross value of the completed work.
(2) Final payment of the retained amounts to the contractor under the contract to which the retained amount relates shall be made after certification by the secretary or his duly appointed designee that the work has been satisfactorily completed and is accepted in accordance with the contract, plans, and specifications, and forty-five days have lapsed from filing the notice of final acceptance with the office of the recorder of mortgages in the parish where the work has been done. Any interest earned on the retained amounts shall be credited to the Transportation Trust Fund.

. Paragraphs (B) and (C) of LSA-R.S. 48:256.5 provide, in full, as follows:
B. Any claimant shall, after the maturity of his claim and within forty-five days after the recordation of final acceptance of the work by the department or of notice of default of the contractor or subcontractor, file a copy of sworn statement of the amount due him with the department having the work done and record the original sworn statement of the amount due him in the office of the recorder of mortgages for the parish in which the work is done.
C. (1) To be entitled to assert the claim given by Subsection B of this Section, the lessor of movables shall deliver a copy of the lease to the department and the contractor, not more than ten days after the movables are first placed at the site of the immovable for use in the work.
(2) The claim or privilege granted the lessor of the movables by Subsection B of this Section is limited to and secures only the part of the rentals accruing during the time the movable is located at the site of the immovable for use in a work. A movable shall be deemed not located at the site of the immovable for use in a work after one or more of the following have occurred:
(a) The work is completed or abandoned.
(b) The notice of final acceptance of the work is filed.
(c) The lessee has abandoned the movable, or use of the movable in a work is completed or no longer necessary, and the owner or contractor gives written notice to the lessor of abandonment or completion of use.

. We note that Mr. James further testified that the contractor’s contract with subcontractor PRC specifically stated that PRC could not subcontract out its work without the contractor’s consent, and that the contractor would not have consented to such subcontracting.