SHANE SALATHE

VERSUS

THE PARISH OF JEFFERSON THROUGH
THE DEPARTMENT OF SEWERAGE

NO. 19-CA-427
C/W
19-C-303

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 749-298, DIVISION "M"
HONORABLE HENRY G. SULLIVAN, JR., JUDGE PRESIDING

July 15, 2020

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Robert A. Chaisson, and Hans J. Liljeberg

<u>**AFFIRMED; WRIT DISMISSED**</u>

**FHW**
**RAC**
**HJL**

COUNSEL FOR DEFENDANT/APPELLANT,
CONSOLIDATED SEWERAGE DISTRICT NO. 1 OF THE PARISH OF
JEFFERSON (INCORRECTLY IDENTIFIED AS THE PARISH OF
JEFFERSON THROUGH THE DEPARTMENT OF SEWERAGE)
    Guice A. Giambrone, III
    Jacob K. Best

COUNSEL FOR DEFENDANT/APPELLANT,
AMERICAN ALTERNATIVE INSURANCE CORPORATION
    Tara E. Clement
    Jameson M. Taylor

COUNSEL FOR DEFENDANT/APPELLEE,
ALTERRA AMERICAN INSURANCE COMPANY
    Patrick J. McShane
    Danica B. Denny
    Kathleen P. Rice

COUNSEL FOR DEFENDANT/APPELLEE,
AMERISURE INSURANCE COMPANY
    Glen E. Mercer
    Kourtney Twenhafel

**WICKER, J.**

Defendants, Consolidated Sewerage District No. 1 of the Parish of Jefferson (hereinafter "the Parish") and American Alternative Insurance Company (hereinafter "AAIC") appeal from the trial court's decision granting summary judgment in favor of co-defendants Amerisure Insurance Company (hereinafter "Amerisure") and Alterra American Insurance Company (hereinafter "Alterra"), finding that policies issued were void to the extent that they provided indemnity and insurance coverage for damages caused by the Parish's own negligence. This decision was certified as final for immediate appeal by the trial court. For the following reasons, we affirm the decision of the trial court.

The trial court also rendered a second judgment in favor of the Parish, granting summary judgment on the issue of insurance policy ranking. Alterra filed a writ of review with this Court designated as 19-C-303. On September 20, 2019, this Court issued an order consolidating the writ application with this appeal. Herein, for the reasons discussed below, we dismiss the writ.

UNDISPUTED FACTS AND PROCEDURAL HISTORY

Plaintiff, Shane Salathe,[1] filed suit for injuries he sustained while in the course and scope of his employment with Fleming Construction Company. At the time of his injuries, Mr. Salathe was performing work at a lift station, part of the sewerage system of the Parish. The following summary of this matter is taken from the prior appeal in this case, *Salathe v. Par. of Jefferson through Dep't of Sewerage*, 18-447 (La. App. 5 Cir. 12/19/18), 262 So.3d 429, 431-433:

> On November 7, 2014, the Consolidated Sewerage District No. 1 of the Parish of Jefferson (hereinafter "the Parish") and Fleming Construction Company, LLC (hereinafter "Fleming") entered a contract for replacement or restoration of existing sewer mains in Jefferson Parish. The "Standard General Conditions of the Construction Contract" (hereinafter "General Conditions Contract") between the Parish and Fleming required Fleming to procure certain insurance policies naming the Parish as an additional insured, including, inter alia, a commercial general liability and umbrella

---

[1] On January 15, 2019, Karen and Wayne Salathe filed a motion to substitute legal successors due to death of plaintiff, which was granted.

policy and also indemnifying the Parish, except in the instance of the sole negligence of the Parish.

On or about August 26, 2014, Fleming procured from Amerisure the Commercial General Liability policy bearing Policy No. GL 20778990301, (hereinafter "Amerisure policy"), effective from August 1, 2014 through August 1, 2015, with the limit of $1,000,000.00 per occurrence. Further, Fleming procured from Alterra America Insurance Company the Commercial Excess Liability policy bearing Policy No. MAXA3EC50001291 (hereinafter "Alterra policy"), effective from August 1, 2014 through August 1, 2015, with the limit of $5,000,000.00 per occurrence.

On January 8, 2015, the Parish issued a work order to Fleming to "Change all 4 Discharge Base Elbows, rails & all piping in wet wells" at Lift Station E7-6 in Metairie. On February 5, 2015, a Fleming foreman, Shane Salathe, appellant herein, descended a ladder into the wet well to perform his work. As Mr. Salathe ascended the ladder to exit the wet well, he grasped the door to the well to steady himself. When he put pressure on the door, the locking arm on the hatch door failed, allowing the door to slam, which caused Mr. Salathe to fall off of the ladder. Mr. Salathe fell almost thirty feet to the bottom of the well and suffered a traumatic brain injury and paraplegia.

On May 1, 2015, Mr. Salathe filed a petition for damages, naming the Parish as defendant. In his petition, Mr. Salathe contends that the Parish is liable for his injuries through its negligence in, *inter alia*, failing to maintain the hinge on the door to the well, which failed and caused his injuries. On August 7, 2017, Mr. Salathe filed a "Second Amended Supplemental, Restated and Superseding Petition" adding, as defendants, the Parish's insurer, American Alternative Insurance Company (hereinafter "AAIC"), and Fleming's insurers, Amerisure and Alterra (hereinafter "Fleming's insurers") because of their contractual obligation to defend and indemnify the Parish as a named insured.

On October 16, 2017, Fleming's insurers filed their joint motion for partial summary judgment asking the trial judge to declare that the contractual indemnity and insuring agreements between the Parish and Fleming are "void, null, and unenforceable" under Louisiana law.

\* \* \*

The particular language of the contracts the insurers sought to have declared void, null, and unenforceable include both the indemnity provisions of the General Conditions Contract requiring Fleming to indemnify Jefferson Parish for Jefferson Parish's own negligence as well as the insuring provisions of the same contract

2

requiring Fleming to procure insurance naming Jefferson Parish as an additional insured at Fleming's sole cost. The indemnification provision states:

6.20 Indemnification

To the fullest extent permitted by law, CONTRACTOR agrees to protect, defend, indemnify and save the OWNER… harmless from any and all claims, demands, loss or destruction of property, actions, and causes of action of every kind and character including but not limited to claims based on negligence, strict liability, and absolute liability which may arise in favor of any person or persons on account of illness, … death or personal injuries resulting from the operations contemplated by this Contract, regardless of whether others may be wholly, concurrently, partially or solely negligent, or strictly liable, or absolutely liable, or otherwise at fault, and regardless of any defect in the premises, equipment, or materials, irrespective of whether same preexisted this Agreement, except for damages arising out of injuries to or property claims of third parties caused by the sole negligence of OWNER, its employees or agents…

The particular insuring provisions at issue state the following:

5.04 CONTRACTOR'S Liability Insurance

A. CONTRACTOR shall purchase and maintain such liability and other insurance as is provided herein or in the Supplementary Conditions, as is appropriate for the Work being performed and as will provide protection from claims set forth below which may arise out of or result from CONTRACTOR's performance of the Work and CONTRACTOR's other obligations under the Contract Documents, whether it is to be performed by the CONTRACTOR, any Subcontractor or Supplier, or by anyone directly or indirectly employed by any of them to perform any of the Work, or by anyone for whose acts any of them may be liable:
…
2. claims for damages because of bodily injury, occupational sickness or disease, or death of CONTRACTOR's employees;
…
B. The policies of insurance so required by this paragraph 5.04 to be purchased and maintained shall:

1. with respect to comprehensive general liability, automobile liability, and umbrella liability, name the OWNER as additional insured, be primary to any insurance carried by the OWNER, …;
…
4. include contractual liability insurance covering CONTRACTOR's indemnity obligations under paragraphs 6.07, 6.11, and 6.20;
…

As stated above, Fleming procured both a general liability policy (from Amerisure) and an excess policy (from Alterra) pursuant to these insuring requirements set forth in the General Conditions Contract with Jefferson Parish. Notably, the Amerisure CGL policy contained a Contractor's Blanket Additional Insured Endorsement (to which the Alterra excess policy was also subject) which contains the following provision:

1. a. SECTION II – WHO IS AN INSURED is amended to add as an insured any person or organization:

   (1) Whom you [Fleming] are required to add as an additional insured on this policy under a written contract or written agreement relating to your business; or

   (2) Who is named as an additional insured under this policy on a certificate of insurance.
   …
   3. The insurance provided under this endorsement is limited as follows:

   a. That person or organization is an additional insured only with respect to liability arising out of:

   …

   (2) Ongoing operations performed by you [Fleming] or on your behalf. …

Fleming's insurers argue that the language of indemnity and insuring provisions in the General Conditions Contract is null, void, and unenforceable under Louisiana law, and therefore, pursuant to the language of the endorsement to their insurance policies, Jefferson Parish is not an additional insured.

On May 29, 2018, the trial court rendered judgment in favor of Fleming's insurers and dismissed with prejudice the claims against them. On the appeal of that judgment, this Court reversed on procedural grounds, vacated the judgment of the trial court, and remanded the case for further proceedings.

Thereafter, on February 1, 2019, Amerisure and Alterra filed a second motion for summary judgment again alleging no coverage under both Amerisure's

4

GCL policy and Alterra's Commercial Excess Liability policy.[2]  On May 30, 2019,

the trial court granted the motion for summary judgment in favor of Amerisure and

Alterra.  The written judgment of the trial court states:

> IT IS ORDERED, ADJUDGED, AND DECREED that the Motion for Summary Judgment on Behalf of Amerisure Insurance Company and Alterra Insurance Company is hereby GRANTED as follows:
>
> To the extent that the contractual indemnity provisions of the contract between Consolidated District No. 1 of the Parish of Jefferson and Fleming Construction Company, LLC., could be interpreted as requiring Fleming Construction Company, LLC to indemnify Jefferson Parish for Jefferson Parish's own sole, joint, or concurrent negligence, those provisions are declared null, void, and unenforceable under Louisiana law.
>
> To the extent that the contractual indemnity provisions of the contract between Consolidated District No. 1 of the Parish of Jefferson and Fleming Construction Company, LLC could be interpreted as requiring Fleming Construction Company, LLC to name Jefferson Parish as an Additional Insured for the purpose of providing coverage to Jefferson Parish for Jefferson Parish's own negligence, those provisions are declared null, void, and unenforceable under Louisiana law.

The Parish and AAIC filed a motion for appeal on June 24, 2019, after the trial

court granted the motion to certify the judgment as final on June 21, 2019.

Additionally on May 30, 2019, and after the trial court found that

Amerisure's CGL policy and Alterra's Commercial Excess Liability policy were

null and void, the trial court rendered a judgment on the Parish's motion for

summary judgment on insurance policy ranking, finding that "If it is determined

that Jefferson Parish is liable for plaintiff's damages," the parties shall tender

payment pursuant to the policies in the following order: Amerisure's OCP and/or

CGL policies providing coverage to the Parish as an Additional Insured; Alterra's

Commercial Excess Liability Policy providing coverage to the Parish as an

Additional Insured; Jefferson Parish's Self-Insured Retention; and AAIC's

---

[2] Plaintiffs filed a motion to strike the motion for summary judgment on the grounds of res judicata.  The trial court denied the motion, and this court denied writs.  "Because the principle of res judicata envisions a separate suit, it does not apply in a case where there is no second suit but merely judgments of the trial and appellate courts within the same suit.  * * * a trial court may grant a re-urged motion for summary judgment, even when no new evidence has been submitted."  *Salathe v. Par. of Jefferson Through Dep't of Sewerage*, 19-145 (La. App. 5 Cir. 4/24/19), --- So.2d ---.

5

Retained Limited Policy issued to the Parish. Alterra filed a writ seeking supervisory review of this judgment, which has been consolidated with this appeal.

In their appeal, the Parish and AAIC do not dispute the underlying facts of the case. They also do not raise as error that first part of the trial court judgment finding the contractual indemnity provisions of the General Conditions Contract to be null, void, and unenforceable. Rather, appellants contend that the trial court legally erred in finding that the contractual obligation to defend and indemnify the Parish *as a named insured*, required by the public contract between Fleming and Jefferson Parish, is null, void, and unenforceable under Louisiana law to the extent that it requires the insurers to provide coverage for Jefferson Parish's neglect. In particular, appellants raise the following issues for this court's consideration:

1) Whether La. R.S. 38:2216(G) of the Public Works Act provides an exclusion for contracts of insurance issued for public works obtained by contractors for the benefit of the public entity.

2) Whether La. R.S. 9:2780.1 of the Louisiana Anti-Indemnity Act ("LAIA") applies to and voids insurance procurement requirements contained in public construction contracts like the one entered into between Jefferson Parish and Fleming.

3) Whether the additional insured provisions in the contract between Fleming and the Parish otherwise violate public policy.

We consider these issues in turn in our discussion below.

DISCUSSION

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. La. C.C.P. art. 966; *Reynolds v. Bordelon*, 14-2371 (La. 6/30/15), 172 So.3d 607, 610. A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether

6

summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Id* at 610. Further, the interpretation of a statute is a question of law and is reviewed by this court under a *de novo* standard of review. *Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.*, 10-193 (La. 1/19/11), 56 So.3d 181, 184.

**La. R.S. 38:2216(G) of the Louisiana Public Works Act**

Appellants argue that La. R.S. 38:2216(G) specifically allows for the additional insured provisions like those in the contract between Jefferson Parish and Fleming. La. R.S. 38:2216(G) provides that, "It is hereby declared that any provision contained in a public contract, *other than a contract of insurance*, providing for a hold harmless or indemnity agreement, or both, [for damage caused by negligence of the public body] is contrary to the public policy of the state, and any and all such provisions in any and all contracts are null and void." (Emphasis supplied.)

The anti-indemnity language of this statute may be applicable in this case because it could render the indemnity provisions set forth in Section 6.20 of the General Conditions Contract between Fleming and the Parish null, void, and unenforceable as a matter of public policy. This may have been the finding of the trial court in the first part of its judgment; however, there were no written reasons included in the trial court's judgment and this issue has not been raised as error on appeal. At issue in this appeal is whether the anti-indemnity language of this statute may be read to also prohibit the insurance requirements set forth in Section 5.04 of the General Conditions Contract.

Other courts which have looked at the applicability of La. R.S. 38:2216(G) to insuring provisions in public works contracts have found that the anti-indemnity language is applicable. This issue was addressed by the court in *Domingue v. H & S Const. Co.*, 546 So.2d 913 (La. App. 3rd Cir. 1989), *writ granted, judgment rev'd*

7

*on other grounds*, 551 So.2d 622 (La. 1989), which held that a public entity could not require a contractor to purchase an insurance policy that would indemnify the public body from its own negligence. The Court said that "The statute does not expressly prohibit a contractor from contracting to provide the public body with liability insurance, but it follows that the public body may not require the contractor to provide such a policy that would circumvent the purpose of the anti-indemnity provision." *Id*. at p. 918.

Furthermore, the Louisiana Supreme Court in *Suire v. Lafayette City-Par. Consol. Gov't*, 04-1459 (La. 4/12/05), 907 So.2d 37, considered the issue of whether a public entity could procure insurance for indemnity against actions of strict liability or absolute liability and found that it could. The court did however, interpret La. R.S. 38:2816(G)(1) to prohibit a public entity from obtaining indemnity if the public entity is found to be jointly or concurrently negligent with the contractor under general liability standards. *Id*. at 53.

Notably, since the *Domingue* and *Suire* cases were decided, Louisiana has enacted the Louisiana Anti-Indemnity Act ("LAIA") which, for the reasons stated below, we find applicable to the insuring provisions of the General Conditions Contract between Fleming and Jefferson Parish. This finding pretermits any further interpretation by this Court of La. R.S. 38:2216(G) with respect to those provisions.

**La. R.S. 9:2780.1 of the Louisiana Anti-Indemnity Act**

The Parish and AAIC contend that La. R.S. 9:2780.1 is not applicable to a construction contract entered into by a public body, and that the applicable law is found in the Louisiana Public Works Act, La. R.S. 38:2241–3410, and specifically R.S. 38:2216(G).[3] We disagree.

---

[3] Appellant cites to *State Through Div. of Admin. v. McInnis Bros. Const.*, 97-0742 (La. 10/21/97), 701 So.2d 937, which states: "The Public Works Act is *sui generis* and provides exclusive remedies to parties in public construction work."

Under our well-settled rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. La. C.C. art. 13; *City of New Orleans v. Louisiana Assessors' Ret. & Relief Fund*, 05-2548 (La. 10/1/07), 986 So.2d 1, 15. The legislative branch is presumed to intend to achieve a consistent body of law and to have passed a law with consideration and knowledge of applicable laws of statutory construction and all existing laws on the same subject. 20 *Louisiana Civil Law Treatise*, Legis. Law & Proc., §6.3 (2019 Ed.). When the legislature enacts a statute without mentioning existing statutes on the same subject matter, the later act may, by necessary implication, effect the repeal of the former law. *State v. Piazza*, 596 So.2d 817, 819 (La.1992); *Eicher v. Louisiana State Police, Riverboat Gaming Enf't Div*., 97-0121 (La. App. 1 Cir. 2/20/98), 710 So.2d 799, 806, *writ denied*, 98-0780 (La. 5/8/98), 719 So.2d 51. However, there is a presumption against implied repeal, based on the theory that the legislature envisions the whole body of law when it enacts new legislation. Therefore, the court should give harmonious effect to all acts on a subject when reasonably possible. *Piazza*, 596 So.2d at 819. It is only when two acts are clearly irreconcilable and so inconsistent that the two cannot have concurrent operation, that the presumption against implied repeal falls, and the later statute governs. *Id*.

At the same time, Louisiana courts have also recognized that where conflicting statutes cannot be harmonized, the statute specifically directed to the matter at issue prevails over a statute more general in character, unless there is legislative intent or expression regarding which statute is to control, such as the phrase "notwithstanding any other provision of law to the contrary." *See* 20 *Louisiana Civil Law Treatise*, Legis. Law & Proc., § 6.3 (2019 Ed.); *LeBreton v. Rabito*, 97-2221 (La. 7/8/98), 714 So.2d 1226, 1229. Moreover, the time honored

9

maxim, *expressio unius et exclusio alterius*, teaches us that when the legislature specifically enumerates a series of items, the omission of other items which could have been easily included in the statute, is deemed intentional. *State v. Louisiana Riverboat Gaming Com'n.*, 94-1872 (La.5/22/95), 655 So.2d 292; *Theriot v. Midland Risk Ins. Co.*, 95-2895 (La. 5/20/97), 694 So.2d 184, 187.

The central issue this Court must determine is whether the LAIA governs the additional insured provisions contained in the contract at issue. As noted above, appellants argue that the LAIA does not apply because a more specific provision, La. R.S. 38:2216(G), applies to public contracts:[4]

> G. It is hereby declared that any provision contained in a public contract, ***other than a contract of insurance***, providing for a hold harmless or indemnity agreement, or both,
>
> (1) From the contractor to the public body for damages arising out of injuries or property damage to third parties caused by the negligence of the public body, its employees, or agents, or,
>
> . . .
>
> is contrary to the public policy of the state, and any and all such provisions in any and all contracts are null and void. [Emphasis added.]

Appellants contend the phrase "other than a contract of insurance" creates an exception that permits contractual provisions that require contractors to include public bodies as additional insureds on their liability policies.[5] Pursuant to relevant legislative history, La. R.S. 38:2216(G) was last amended in 1989 by Acts 1989, No. 333, §1, and has not been amended since that time.

On the other hand, appellees argue that the contract at issue qualifies as a construction contract under the LAIA, which prohibits additional insured

---

[4] The parties do not dispute that the contract at issue qualifies as a public contract. La. R.S. 38:2211(A)(10) defines a public contact as "any contract awarded by any public entity for the making of any public works." A public work is defined as "the erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased by a public entity." La. R.S. 38:2211(A)(12).

[5] A dispute also exists between the parties on appeal as to whether the phrase "other than a contract of insurance" in La. R.S. 38:2216(G), is intended to permit insurance procurement requirements in public contracts. If we find that La. R.S. 9:2780.1 governs the contract at issue, we will not reach this issue.

10

provisions except under limited circumstances not applicable in the present matter.

In 2010, the Louisiana Legislature enacted the LAIA, La. R.S. 9:2780.1, which

prohibits certain indemnity and insurance procurement provisions in construction

and motor transportation contracts. The definition of a construction contract under

the LAIA includes the repair or maintenance of a sewer line and does not

specifically exclude public contracts:

> 2)(a) "Construction contract" shall mean any agreement for the design, construction, alteration, renovation, ***repair, or maintenance*** of a building, structure, highway, road, bridge, water line, ***sewer line***, oil line, gas line, appurtenance, or other improvement to real property, or repair or maintenance of a highway, road, or bridge, including any moving, demolition, or excavation, . . . [Emphasis added.]
>
> La. R.S. 9:2780.1(A)(2)(a).

La. R.S. 9:2780.1(C) renders null, void, and unenforceable, provisions in

construction contracts that require an indemnitor to procure liability insurance

covering the acts or omissions of an indemnitee:[6]

> C. ***Notwithstanding any provision of law to the contrary and except as otherwise provided in this Section,*** any provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract or construction contract which purports to ***require an indemnitor to procure liability insurance covering the acts or omissions or both of the indemnitee***, its employees or agents, or the acts or omissions of a third party over whom the indemnitor has no control is null, void, and unenforceable. However, nothing in this Section shall be construed to prevent the indemnitee from requiring the indemnitor to provide proof of insurance for obligations covered by the contract.

---

[6] La. R.S. 9:2780.1(B) prohibits provisions or agreements which require an indemnitor to indemnify, defend, or hold harmless an indemnitee for liability or damages resulting from the indemnitee's own negligence or intentional acts or omissions:

> B. Notwithstanding any provision of law to the contrary and except as otherwise provided in this Section, any provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract or construction contract which purports to indemnify, defend, or hold harmless, or has the effect of indemnifying, defending, or holding harmless, the indemnitee from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the indemnitee, an agent or employee of the indemnitee, or a third party over which the indemnitor has no control is contrary to the public policy of this state and is null, void, and unenforceable.

While the trial court did not specify the provision of law it relied upon in rendering its decision on the indemnity issue, the trial court determined the indemnity provisions in the contract at issue are null, void, and unenforceable to the extent they "could be interpreted as requiring [Fleming] to indemnify Jefferson Parish for Jefferson Parish's own sole, joint, or concurrent negligence." As noted above, appellants do not dispute this portion of the judgment.

11

D. Notwithstanding any contractual provision to the contrary, ***this Section shall apply to and govern any construction contract to be performed in this state*** and any motor carrier transportation contract relative to loading or unloading activities, or any services incidental thereto, which occur in this state. Any provision, covenant, or clause in such contracts which conflicts with the provisions of this Section shall be null, void, and unenforceable.  [Emphasis added.]

If, for purposes of this appeal only, one accepts appellants' argument that La. R.S. 38:2216(G) permits additional insured requirements covering a public entity's negligence, then based on the facts at issue in the present matter, this provision is in conflict with the prohibitions contained in La. R.S. 9:2780.1(C) quoted above.[7]  Appellants contend that pursuant to the laws of statutory construction governing conflicting statutes, the more specific statute governing public contracts, La. R.S. 38:2216(G), should control.  As explained above, however, this rule does not apply if one of the statutes includes language, such as "[n]owithstanding any other provision of law to the contrary," which signals the legislature's intent as to which statute should control.

By including the phrase, "[n]otwithstanding any provision of law to the contrary and except as otherwise provided in this Section," in the opening sentence of La. R.S. 9:2780.1(C), the legislature expressed its intent for La. R.S. 9:2780.1(C) to govern defined construction contracts performed in Louisiana, notwithstanding other existing laws to the contrary and subject only to the exceptions set forth in the LAIA.  La. R.S. 9:2780.1(D) further evidences the legislature's intent to apply the LAIA to the broad range of construction contracts defined in the statute, as it states that the LAIA "shall apply to and govern any construction contract to be performed in this state."  The LAIA does not specifically exclude public contracts from its definition of construction contracts,

---

[7] As discussed more fully below, Section I of the LAIA permits additional insured provisions under certain limited circumstances which the parties agree are not applicable in this case.

12

and includes within its definition, the construction, repair and maintenance of highways, bridges, water lines and sewer lines, which traditionally involve a public entity as a contracting party.

Based on the foregoing, we find that La. R.S. 9:2780.1(C) governs the contract at issue unless subject to an exception set forth in the LAIA. The following subsections outline the exceptions to the application of the LAIA:

> E. The provisions of this Section are not intended to, nor shall they be judicially interpreted, to alter, add to, subtract from, amend, overlap, or affect the provisions of R.S. 9:2780 or R.S. 38:2195.
>
> F. The provisions of this Section shall not apply to prohibited clauses in any motor carrier transportation contract and any construction contract entered into prior to January 1, 2011.
>
> G. Nothing in this Section shall prohibit a motor vehicle operator from securing uninsured motorist coverage.
>
> H. Nothing in this Section shall prohibit any employee from recovering damages, compensation, or benefits under workers' compensation laws or any other claim or cause of action.
>
> I. Nothing in this Section shall invalidate or prohibit the enforcement of the following:
>
> (1) Any clause in a construction contract containing the indemnitor's promise to indemnify, defend, or hold harmless the indemnitee or an agent or employee of the indemnitee if the contract also requires the indemnitor to obtain insurance to insure the obligation to indemnify, defend, or hold harmless and there is evidence that the indemnitor recovered the cost of the required insurance in the contract price. However, the indemnitor's liability under such clause shall be limited to the amount of the proceeds that were payable under the insurance policy or policies that the indemnitor was required to obtain.
>
> (3) Any clause in a construction contract that requires the indemnitor to procure insurance or name the indemnitee as an additional insured on the indemnitor's policy of insurance, but only to the extent that such additional insurance coverage provides coverage for liability due to an obligation to indemnify, defend, or hold harmless authorized pursuant to Paragraph (1) of this Subsection, provided that such insurance coverage is provided only when the indemnitor is at least partially at fault or otherwise liable for damages ex delicto or quasi ex delicto.

13

Sections F, G and H are clearly inapplicable to this matter. In 2012, the legislature added Section I to the LAIA which, *inter alia*, allows certain indemnification and insurance procurement provisions in construction contracts if the indemnitor recovered the cost of the required insurance in the contract price. The parties agree that Jefferson Parish did not pay for the cost of the additional insured coverage and therefore, Section I does not provide an exception that allows the additional insured coverage at issue in this matter.

La. R.S. 9:2780.1(E) provides that the LAIA should not be judicially interpreted to amend or affect two specific provisions: 1) La. R.S. 9:2780, the Oilfield Anti-Indemnity Act ("OAIA"), and 2) La. R.S. 38:2195. The OAIA contains similar prohibitions against indemnity and insurance procurement provisions in contracts pertaining to wells for oil, gas, or water, or drilling for minerals, and is not applicable to the instant matter. *See* La. R.S. 9:2780(B) and (G).

Similar to La. R.S. 38:2216(G), the second exception, La. R.S. 38:2195, is contained in Title 38 governing public contracts. While La. R.S. 38:2216(G) prohibits contractual provisions requiring a contractor to indemnify a public entity for the public entity's own negligence, Section 2195(A) addresses the opposite scenario and prohibits a public entity from assuming liability for the negligence of anyone other than the public entity, its employees or agents:

> A. It is hereby declared that any provision contained in a public contract, ***other than a provision naming another as a co-insured or additional beneficiary in a contract of insurance***, which requires a public entity to assume liability for damages arising out of injuries or property damage to the contracting parties or to third parties caused by the negligence of anyone other than the public body, its employees, or agents, is contrary to the public policy of the state of Louisiana. Any and all such provisions in any and all public contracts issued on or after October 1, 1988, are null and void. [Emphasis added.]

14

As noted above, La. R.S. 38:2195(A) allows a public entity to name another as a co-insured or additional beneficiary in a contract of insurance. However, the contractual provision at issue involves the opposite scenario, which is a requirement that the contractor name the public body as an additional insured. Therefore, La. R.S. 38:2195(A) is not applicable and does not permit the additional insured provision at issue.

More pertinent in determining the intent of the legislature is that Section E does not list La. R.S. 38:2216 as an exception to the application of the LAIA. The legislature could have been easily included La. R.S. 38:2216(G) in its list of excepted statutes, but chose not to do so. We must assume the legislature enacted the LAIA with consideration and knowledge of all existing laws affecting indemnity and insurance procurement provisions, including La. R.S. 38:2216(G), and that its decision not to list this statute as one not affected, altered or amended by the LAIA was intentional.

Appellants also urge this Court to follow the First Circuit's determination in *Jeff Mercer, L.L.C. v. State, Dept. of Transp. and Development*, 13-1108 (La. App. 1 Cir. 11/19/13), 2013 WL 12123234, finding that "La. R.S. 9:2780.1 does not apply to public works contracts with DOTD. La. R.S. 48:250 et seq. and La. R.S. 38:2216(G) govern this matter." In a subsequent related decision, *Jeff Mercer, L.L.C. v. State, Dept. of Transp. and Development*, 14-1751, 1752 (La. App. 1 Cir. 6/5/15), 174 So.3d 1180, *writ denied*, 15-624 (La. 10/30/15), 179 So.3d 618, the First Circuit noted the issue before it in this prior decision was whether La. R.S. 9:2780.1 applied to a public works contract and prevented the DOTD from requiring contractors to purchase liability insurance coverage for the DOTD. *Id.* at 1182. The First Circuit refused to reconsider this merits of this issue pursuant to the law of the case doctrine. *Id.* at 1184-87. However, it did provide some

15

additional reasons for its decision to apply La. R.S. 38:2216(G), rather than La. R.S. 9:2780.1:

> We re-iterate the essence of our writ disposition in the *Mercer* lawsuit: pursuant to general rules of statutory construction and in light of the specific provisions of the DOTD Public Works Act, which governs all contracts related to DOTD, and the Public Works Act, which governs all public works contracts, found respectively in Titles 48 and 38 of the Louisiana Revised Statutes, the more general law found in La. R.S. 9:2780.1 is pre-empted and not applicable to DOTD. See *Filson v. Windsor Court Hotel,* 04–2893 (La.6/29/05), 907 So.2d 723, 726 (where two statutes deal with the same subject matter, they should be harmonized if possible; however, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character); *Don Bihm Equipment Co., Inc. v. Louisiana Dept. of Transp. and Development*, 10–1997 (La.App. 1st Cir.5/6/11), 64 So.3d 897, 902 (the DOTD Public Works Act exclusively governs the public contracts of DOTD); *Johnson v. Shafor*, 08–2145 (La.App. 1st Cir.7/29/09), 22 So.3d 935, 940, *writ denied*, 09–1921 (La.11/20/09), 25 So.3d 812 (where there is a conflict between two statutory provisions, the statute that is more specifically directed to the matter at issue must prevail over the statute that is more general in character).
>
> *Id.* at 1186, fn. 5.

We decline appellants' invitation to follow the First Circuit's decision in *Mercer*, as that court's reasons dos not appear to consider the effect of the clear and unambiguous language of La. R.S. 9:2780.1(C) analyzed above, which provides that this provision applies "[n]otwithstanding any provision of law to the contrary and except as otherwise provided in this Section."

Based on the forgoing, we find that La. R.S. 9:2780.1(C) applies to the contract at issue entered into between Jefferson Parish and Fleming. As a result, we affirm the trial court's May 30, 2019 judgment finding that the additional insured provisions contained in the contract entered into between Jefferson Parish and Fleming are null, void and unenforceable, to the extent they can be interpreted as requiring Fleming to indemnify and procure insurance coverage for Jefferson Parish's own negligence, and dismissing, with prejudice, claims against certain commercial liability policies issued to Fleming by Amerisure and Alterra, to the

extent the policies could be interpreted as providing coverage for Jefferson Parish's own negligence. Futhermore, having so found, we decline to address any further arguments as to whether these insuring terms are otherwise contrary to public policy.

WRIT 19-C-303

In this writ application, Alterra requests that we reverse the trial court judgment that ranks for payment its excess policy, issued to Fleming for the benefit of the Parish, ahead of the Parish' self-insured retention and the Policy issued by AAIC, the Parish's insurer. In the alternative, Alterra argues that the Parish's self-insured retention is not an insurance policy, but instead in the nature of a deductible, which should be exhausted prior to any payment under any insurance policy.

Mr. Salathe filed suit alleging that his damages occurred as a result of the Parish's negligence. In this opinion, we affirm the trial court's conclusion that the excess policy issued by Alterra does not provide coverage for damages caused by the Parish's negligence. Given this finding, and the fact that at this juncture in the proceedings, there has not been a ruling on the issue of liability and/or fault of the Parish, any question concerning the ranking of the policies of insurance is either moot or premature. This writ application does not present a sufficiently justiciable controversy at this time. "It is well-settled that courts will not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies." *Perschall v. State*, 96-0322 (La. 7/1/97), 697 So.2d 240, 251. For this reason, we do not consider the merits presented and we dismiss this writ application.

For the above discussed reasons, we affirm the judgment of the trial court dismissing, with prejudice, all claims asserted against Amerisure's CGL policy and

17

Alterra's Excess Liability Policy to the extent that the policies could be interpreted as providing coverage for the Parish's own, sole, joint or concurrent negligence.

We further dismiss the Writ filed by Alterra on the issue of insurance ranking.

**AFFIRMED; WRIT DISMISSED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## <u>NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY</u>

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JULY 15, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 19-CA-427

**C/W 19-C-303**

### <u>E-NOTIFIED</u>

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE HENRY G. SULLIVAN, JR. (DISTRICT JUDGE)

JACK E. MORRIS (APPELLEE)
JACOB K. BEST (APPELLANT)
JAMES A. PRATHER (APPELLEE)
KATHLEEN P. RICE (APPELLEE)
GLEN E. MERCER (APPELLEE)

RICHARD C. TRAHANT (APPELLEE)
TARA E. CLEMENT (APPELLANT)
PATRICK J. MCSHANE (APPELLEE)
TRAVIS L. BOURGEOIS (APPELLEE)

GUICE A. GIAMBRONE, III (APPELLANT)
JAMESON M. TAYLOR (APPELLANT)
DANICA B. DENNY (APPELLEE)
SIDNEY W. DEGAN, III (APPELLEE)

### <u>MAILED</u>

LAUREN A. GUICHARD (APPELLEE)
ATTORNEY AT LAW
1100 POYDRAS STREET
SUITE 3700
NEW ORLEANS, LA 70163

WILLIAM P. WORSLEY (APPELLANT)
ATTORNEY AT LAW
701 POYDRAS STREET
SUITE 4800
NEW ORLEANS, LA 70139

KOURTNEY TWENHAFEL (APPELLEE)
ATTORNEY AT LAW
365 CANAL STREET
SUITE 1710
NEW ORLEANS, LA 70130

CHRISTOPHER MEEKS (APPELLEE)
JAMES W. ADAIR (APPELLEE)
ATTORNEYS AT LAW
THREE SANCTUARY BOULEVARD
SUITE 301
MANDEVILLE, LA 70471

STEPHANIE L. CHERALLA (APPELLEE)
FOSTER P. NASH, III (APPELLEE)
ATTORNEYS AT LAW
400 POYDRAS STREET
SUITE 2600
NEW ORLEANS, LA 70130